UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22225-CIV-SEITZ

OSCAR PEREZ, *et al.*,

    Plaintiffs,

v.

CAREY INTERNATIONAL, INC., *et al.*,

    Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL OPPOSING MEMORANDUM "ON THE MERITS" OF PLAINTIFFS' FEE MOTION, IF THE COURT FINDS PLAINTIFFS' SUPPLEMENTAL MOTION TO BE PROPERLY AND TIMELY FILED**

Plaintiffs ("Plaintiffs"), through their undersigned attorneys, file this Reply Memorandum In Support Of Their Motion For Attorneys' Fees And Response To Defendants' Motion For Leave To File Supplemental Opposing Memorandum "On The Merits" Of Plaintiffs' Fee Motion, If The Court Finds Plaintiffs' Supplemental Motion To Be Properly And Timely Filed, and state:

**PRELIMINARY STATEMENT**

Although this document is co-titled a reply and a response, it is truly solely a Response to Defendants' Motion, because Defendants did not assert any substantive arguments to the Plaintiffs' request for attorneys fees, but rather have assumed that this Court, rather than the Special Master, should decide whether the supplemental fee petition is timely, even though the parties agreed in their settlement agreements that Special Master Weisberg would be resolving the issues with respect to fees and costs, and issue a report and recommendation that the parties could then file objections to with the Court, as the Special Master has noted on the record. [D.E. 131]. Notably, the parties

have a history of having the Special Master rule on fee petitions and also ancillary issues concerning them, as Special Master Weisberg resolved the issue of whether a certain transcript could be filed with the Court and also whether the Memorandum the parties drafted as to whether the *Powell* Order on Attorneys Fees should apply in this Case could be filed with the Court. [D.E. 131]. It is completely without merit, and in fact judge-shopping, for the Defendants to seek to have the Court first rule on the supplemental fee motion, rather than Weisberg. This should come as no surprise, because the Defendants tried this very tactic in *Powell* and this case where they filed a Motion to have the Court determine attorneys fees and costs concerning the arbitration Plaintiffs (from both cases), rather than the arbitrator. This Court stated that the Defendants' tactic had "the taint of disingenuousness", *Powell v. Carey Int'l, Inc.*, 558 F. Supp. 2d 1265, 1269 (S.D. Fla. 2008), because the Defendants sought their own attorneys fees, and compelled all claims (including attorneys fees) to arbitration, but then fourteen months later, after it believed that this Court would issue a ruling on attorneys fees favorable to them, moved to have the Court issue an order stating that the Court should rule on any fee petition that Plaintiffs' counsel would file concerning the arbitration, rather than the arbitrator.

The Defendants have done the same thing here, because they decided to breach the settlement agreements, and have the Court decide entitlement to fees, rather than the Special Master as agreed. [*See* D.E. 131 at 1]. This alone warrants denial of the relief sought; if a plaintiff tried this tactic, it would result in dismissal or sanctions. *Disability Advocates and Counseling Group, Inc. v. Betancourt*, 379 F. Supp. 2d 1343 (S.D. Fla. 2005) (dismissing case with prejudice under facts very much in counterpoint to the facts here; previous case was dismissed without prejudice, subsequent case was re-filed without identifying the former case on the civil cover sheet, in an apparent attempt to judge-shop—to obtain a judge more receptive to Title III claims under the

ADA). The Court and the parties would be well-served to sanction the Defendants by granting the First Supplemental Motion for Attorneys Fee by Default.

Further, the Defendants' Motion substantively is also completely without merit. The Defendants failed to bring to the attention of the Court binding precedent which definitively resolves the issue before the Court, *e.g.*, *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309-10 (11th Cir. 2001) (specifically holding that supplemental fee motions may be filed "within 30 days after the entry of a post-judgment order ruling on a post-judgment motion"—here the supplemental fee petition was filed within 30 days of the Court's Order on attorneys fees (a post-judgment motion)—as the Court's Order was filed on September 26, 2008, and the supplemental fee petition was filed on October 15, 2008); *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184, 1185 (11th Cir. 1993) (finding that the original fee motion filed 23 months after final judgment was issued, and 14 months after the notice of appeal was issued was timely).

Further, unfortunately, the Defendants rely on cases that do not involve the FLSA where awards of attorneys fees are mandatory, *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) (holding that "fee awards [are] mandatory for prevailing plaintiffs" in FLSA cases); 29 U.S.C. § 216(b), but rather rely on cases in which the authority for fees was merely discretionary. None of the cases that the Defendants cite are apposite, and even if they were, the Court is bound to follow binding Circuit precedent. The Defendants' reliance on *Grayden v. City of Orlando*, 171 Fed. Appx. 284 (11th Cir. WL 2006) is misplaced, because it is an unpublished decision and as such is not binding, and it merely notes that the magistrate judge in the Middle District of Florida told the Plaintiff to specify the amount of fees that he was seeking, and he did not, and that the usual practice in the Middle District of Florida is for the Plaintiff's lawyer to estimate in his first fee petition how much time he believes that he will spend litigating the fee

issue. That is not the usual practice in the Southern District of Florida, as undersigned counsel has been involved in numerous fee petitions (both filing them and defending them) and has not seen this attempted. Even if it some lawyers were attempting it, it would be impossible to estimate the time it would take to litigate the fee issues with defense counsel, because defense counsel challenges literally every fee entry submitted by Plaintiffs' counsel; the Court need go no further than the litigation involved in determining the fees in the *Powell* case to see that. Moreover, it is believed that if undersigned counsel attempted to ask for future attorneys fees that were estimated (and not actually performed) Defendants counsel would vehemently object, and probably accuse undersigned counsel of attempting to recover money for work not yet performed—something for nothing.

In any event, the Defendants assert the following arguments (after presuming that this Court is the proper forum to decide the issues presented by the Defendants): 1) the Court does not have jurisdiction to determine the supplemental motion; 2) despite the fact that Defendants believe the supplemental fee motion is "verbatim and [contains] largely irrelevant reiterations of the Plaintiff's first motion for attorneys fees", responding to the fee motion will cause significant expenditure of funds, *e.g.*, the Special Master "likely will devote hours addressing the merits of the parties' briefing on this supplemental motion, at additional cost to the parties"; 3) Defendants rely on various case law; and 4) the Defendants should be given the opportunity to respond to the fee motion. These arguments, none of which have any merit, will be addressed in turn.

However, as noted above, *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309-10 (11th Cir. 2001) requires that the Defendants' Motion be denied and their arguments rejected, regarding the fee petition being untimely. Concerning jurisdiction, while it is true that generally an appeal deprives the court of jurisdiction over issues involved in the appeal, it is well established that a district court retains ancillary jurisdiction to decide motions regarding attorneys fees and costs.

*Rothenberg v. Security Management, Inc.*, 677 F.2d 64 (11th Cir. 1982); *Baum v. United States*, 432 F.2d 85 (5th Cir. 1970). It should be obvious to anyone that the Notice of Appeal in this case only concerns the fees and costs that were previously decided by the Court in its Order, and that attorneys fees and costs which have not been ruled on yet cannot be the subject of an appeal filed in the past. Finally, Plaintiffs squarely ask the Court to deny Defendants' Motion and grant the supplemental motion because Defendants tried the judge-shopping tactic again.

## MEMORANDUM OF LAW

### I. THIS COURT HAS JURISDICTION OVER THE PRESENT SUPPLEMENTAL FEE MOTION

Concerning jurisdiction, the Defendants argue that because the Plaintiffs appealed the first order on fees, this Court is without jurisdiction to determine any supplemental fees, because "the filing of a notice of appeal deprives the district court of jurisdiction over all issues of the case involved in the appeal." (*Defendants' Response* at 4) (citing *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003)). This argument is completely without merit. While the general statement of law cited by the Defendants may be true, the filing of a notice of appeal does not "prevent the court from entertaining motions in matters collateral to those at issue on appeal." *Mahone*, 326 F.3d at 1179 (noting that after an appeal is filed the district court has jurisdiction to decide, *e.g.*, Rule 60(b) and Rule 11 motions).

It is well established that a district court retains ancillary jurisdiction to decide motions regarding attorneys fees and costs. *Rothenberg v. Security Management, Inc.*, 677 F.2d 64 (11th Cir. 1982); *Baum v. United States*, 432 F.2d 85 (5th Cir. 1970). The Fifth Circuit has described this rule as a "well-recognized exception to the transfer of jurisdiction that occurs when a notice of appeal is filed." *Thomas v. Capital Security Servs., Inc.*, 812 F.2d 984, 987 (5th Cir. 1987). According to the Fifth Circuit (based on former Fifth Circuit precedent binding on this Court), "the basis for this

exception is that attorney's fees/sanctions are matters collateral to the merits of the action." *Id.* Therefore, the fact one time period for which attorneys fees were awarded is on appeal, does not mean that the Court is without jurisdiction to entertain fees and costs for a subsequent time period not involving the fees that pertain to the appeal.

Ridiculously, Defendants argue that "Plaintiffs' supplemental motion raises issues which will be the subject matter of the appeal – as evidenced by the fact that the arguments in the supplemental motion duplicate the arguments in the Plaintiffs' first fee motion." (*Defendants' Response* at 4). Yes, the Plaintiffs believe that the same lodestar framework from *Hensley v. Eckerhart*, 461 U.S. 424, 434-35, 440 (1983) and its progeny applies to both motions (and in fact all fee motions), but that hardly makes them duplicative, because they seek fees for completely different time periods. None of the fees sought in the supplemental motion have anything to do with the fees sought in the original motion, and Defendants surely understand that.

Defendants even attempt to explain away the fact that the supplemental motion was filed before the Notice of Appeal. *Id.* They cannot, because *Villano* states that it does not matter, and expressly holds when the supplemental fee motion is filed within 30 days of the final judgment on the original fee motion, the supplemental motion is timely filed. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309-10 (11th Cir. 2001). The Defendants' argument, taken to its logical extreme, creates a conundrum for the Defendants: if in fact there is no jurisdiction to determine the supplemental fee motion, then there is no jurisdiction to consider the Defendants' instant Motion for Leave. Even if the Defendants were right and the Notice of Appeal divested the Court of jurisdiction over the issue, that would not justify the relief that the Defendants seek (denial of supplemental motion), but rather would place that Motion in a holding pattern until the Eleventh Circuit issues its mandate, and then the Motion could be decided, once there is jurisdiction. Since

Defendants' arguments are so ridiculous and contrary to binding precedent, the Plaintiffs request that the Court simply grant the Plaintiffs' supplemental motion as a sanction.  It is strongly believed that the only reason the arguments in the Defendants' Response were even raised is because defense counsel believes that she can get away with anything before this Court as long as undersigned counsel is the opposing counsel.  Undersigned counsel would not dare make such arguments (although he would not make such arguments before any tribunal).  If the Defendants wanted to end the litigation over attorneys fees, they could do so in a minute by settling them.  We have asked Defendants repeatedly to settle the fee issues, and they have no interest in doing so.

Finally, the *Lindert* case is completely without merit, as the party seeking fees in that case filed the initial motion for fees well after 30 days after the final judgment in the case which started the 30-time period to file such motions.  In this case, both the original fee motion and the supplemental fee motion were filed within 30 days of the issuance of the final judgments.  Concerning the first Motion, had it not been filed timely, it could be subject to dismissal on that ground, but the Court would still have to weigh the FLSA's mandatory fee-requirement and 29 U.S.C. § 216(b)'s failure to have any constraints on when such motions can be filed, against the 30-day period for filing fee motions in the Local Rules.  The equities could lie in favor of granting initial motions for fees, even though they are filed beyond the 30-day period, and Eleventh Circuit precedent supports that result.  *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1184, 1185 (11th Cir. 1993) (finding that the original fee motion filed 23 months after final judgment was issued, and 14 months after the notice of appeal was issued was timely).  Regardless, that is not an issue here, because the original Motion was timely (under Local Rule 7.3) filed.  The timing of the supplemental motion is not even an issue.  *Id.*  The courts have held that the Local Rules must be interpreted in a manner that does not let them trump federal statutory rights (and limiting fees in a

FLSA case on the ground that were sought untimely would trample on § 216(b) mandatory requirement). *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1309-10 (11th Cir. 2001).

## II. THE SUPPLEMENTAL MOTION SHOULD NOT BE DENIED AS UNTIMELY

The Defendants first note in a footnote that 29 U.S.C. § 216(b) contains no timeframe for the filing of fee motions. (*Defendants' Response* at 5 n.1). The Defendants are correct, yet, despite circuit precedent that states that remedial statutes like the FLSA must be construed broadly in favor of remediation, the Defendants ask that the Court read in a strict time limit into the federal statute, and thus construe the statute narrowly. Over fifty years ago, the Supreme Court determined the approach that must be followed in construing the provisions of the Fair Labor Standards Act. *Tennessee Coal, Iron & Ry. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). A number of other circuits, including the Eleventh Circuit, have explicitly followed that approach. *EEOC v. White and Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989); *Reich v. Davis*, 50 F.3d 962, 963 (11th Cir. 1995). It is a simple one, often used in construing statutes designed to protect individual rights. In *Tennessee Coal*, the Court explained that because the FLSA is a remedial statute, it must be interpreted broadly; the Court wrote:

> [The FLSA is] remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil. . . . Those are rights that Congress has specifically legislated to protect. Such a statute must not be interpreted or applied in a narrow, grudging manner.

*Tennessee Coal*, 321 U.S. at 597.

The Defendants then argue that the settlement agreements state that the Court retains jurisdiction for only 90 days. It is unfortunate that the Defendants decided to breach the settlement agreements, which are confidential, by disclosing their terms in their instant Response. As stated

above, the Court has ancillary jurisdiction over collateral matters, and the issue of fees and costs is ancillary, as noted above in § I.

The Defendants then argue that because Federal Rule of Civil Procedure 54(d)(2) states that fee motions must be filed within 14 days, the supplemental fee motion was untimely. That is ridiculous. First, the Local Rules have extended the time to thirty (30) days from fourteen (14), and *Villano* holds that Local Rules can do that. However, *Villano* also holds that Local Rules should not be interpreted by the courts in a manner that would trample on federal statutory rights, as follows: "[a] local rule, however, cannot eviscerate a statutory right." *Villano*, 254 F.3d at 1309-10. Second, the *Villano* court specifically held that what Defendants seek to do here is not proper; namely, cut off all fees after the first fee motion is filed, by trying to thwart the filing of any supplemental motions on the ground that they are untimely—in *Villano* there were four (4) such motions. The *Villano* court specifically stated that prevailing plaintiffs have the right to recover for time spent litigating the fee issue, and Defendants are trying to prevent that. Certainly, the Defendants billed Carey Int'l, Inc. for litigating the fee issue, and Plaintiffs should recoup those fees as well. As the Court noted in *McKenzie*, the Defendants hold the aces when it comes to preventing significant fee awards, because they can always settle fee issues, *McKenzie*, 990 F.2d at 1185 n.5, but Defendants refuse to do that, as they would rather fight. This Court noted that about them early on in the *Powell* case, more than three (3) years ago, as it stated that:

> [After questioning the Defendants' assertions of the two exemptions, noting that they are inherently inconsistent, and calling the assertion of the motor carrier exemption as "disingenuous", and stating] [t]he bottom line is that I do not find that the motor carrier exemption applies . . . I will share with you, given all of the litigation in this case, I am wondering why the Defendant continues to – this is just – I am a new person coming into this case and in looking at it it just seems that the Defendants by insisting on the structure that it is in creates a lot of problems for itself. But obviously it doesn't mind paying attorneys fees. That is its choice. But it is going to continue to have problems for itself. I presume it has made that strategic decision.

9

(*Transcript* of Oct. 6, 2005, Status Conference, previously filed attached to reply to fee motion in *Powell*).  After *Gutescu*, *Rodriguez*, *Powell*, and now *Perez*, the Defendants' proclivity to spend ungodly sums in attorneys fees is as strong as ever.  Third, Rule 54 does not apply here because the fees are sought pursuant to § 216(b) that has no time limit for their submission (although a reasonable time for their submission may be implied in the statute).  Fourth, Plaintiffs have the right to the fees that they incurred litigating the fee issue.  The Defendants should not be heard to complain, since they are litigating the fee issue mightily, and are still spending prodigious sums to fight any fees from being awarded even at this stage.

The Defendants then state in note 2 on page 6 that "[t]he Court and the parties wanted to allow sufficient time for all of the Plaintiffs' claims to be resolved, if possible, before the Plaintiffs' attorneys would have to file any fee applications."  It is unfortunate that the Defendants are revealing things from the transcript of August 21, 2007, which they have been successfully able to prevent from being used in the case (either in the original fee motion—as they argued it should not be used or filed with the Court and the Special Master agreed with them), and from the settlement agreements which were supposed to be confidential.  Actually, there were other things in the settlement agreements that warranted a 90-extension of time for the Court to retain jurisdiction, and the fee motion, Plaintiffs believe, had nothing to do with it.  Plaintiffs cannot describe what the real reasons were without violating the settlement agreements and with violating this Court's previous admonition about discussing things contained in the August 21, 2007 transcript; thus, they will not do that here.  This demonstrates the Defendants cavalier attitude toward whether they need to practice in a professional manner.  If undersigned counsel blew out information from a settlement agreement, you can believe that Defendants would make sure that the Court would never hear the end of it.

The Defendants argue that the services performed are no longer freshly in the mind of the Court. That is ultimately something the Court will have to determine, because it is subjective, but that argument, at first glance, seems completely without merit, because the fees in *Powell* were filed in May, 2007, and fees were sought going back to early 2005, and fees in this case were sought in September, 2007, for work performed more than one (1) year ago. The fact that the current fee petition extends for eight (8) months or so hardly warrants that it should be denied because the work is not fresh in the mind of the Court. When Defendant sought fees in the *Powell* case in its Motion for Sanctions, it originally sought them going back more than two (2) years as well. This shows that Defendants consistently take inconsistent positions with the Court, when they want to seek fees, going back two years is fine, when the Plaintiffs want fees going back eight (8) months, Plaintiffs are seeking fees going back in time too far; they judge-shop concerning which authority (the arbitrator, the Court or the Special Master) should decide fees, and they flip-flop between the various authorities as they deem it suits them, they argue the Court does not have jurisdiction over the supplemental fee motion, but does have jurisdiction over their Motion for Leave, they can divulge information from the settlement agreements and from the "confidential" settlement transcript, but the Plaintiffs cannot, etc. Undersigned counsel believes that the Defendants are out of control in the manner in which they take these contradictory positions with the Court.

The Defendants argue next that the "usual" practice is that attorneys seeking fee awards will supplement their motion to request additional fees prior to the time the Court rules on the first motion. (*Defendants' Response* at 7). Actually, undersigned counsel does not know that to be the usual practice. Plaintiffs have never heard of that practice, much less observed it to be an actual practice. Defendants keep saying that Plaintiffs waited too long, but they fail to state how often supplemental fee motions should be filed: every week, every month? Would the Court appreciate

supplemental fee motions filed that often? Actually, Plaintiffs did not believe that it would, and they believed that filing them only every so often lessens the burden on the Court. If fee motions were filed weekly or monthly, Plaintiffs believe that the Defendants and the Court would quickly put an end to that practice, and Defendants may accuse the Plaintiffs of trying to create additional fees. Plaintiffs have tried hard to settle the fee issue, but, unfortunately, it appears that Defendants believe that if they can get the fee issues before the Court, they will obtain the rulings that they desire, because they have tried the judge-shopping tact twice now.

Defendants rely on *Grayden*, but Grayden is unpublished, and therefore not binding. Under Local Rule 36-2, the Eleventh Circuit makes clear that "[u]npublished opinions are not considered binding precedent." 11th Cir. R. 36-2. The Eleventh Circuit clarifies that "[a]lthough unpublished opinions may be cited as persuasive authority, they are not considered binding precedent. *Reliance on unpublished opinions is not favored by the court*." 11th Cir. R. 36-2, I.O.P.-6 (emphasis added). The Local Rules further explain that "[t]he court may cite [unpublished opinions] where they are specifically relevant to determine whether the predicates for *res judicata*, collateral estoppel, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case." 11th Cir. R. 36-2, I.O.P.-7. Thus, the Eleventh Circuit contemplates the limited use of its unpublished opinions for specific cases, but clearly frowns upon reliance on unpublished opinions when they are not "specifically relevant" to a particular case. The Plaintiffs request that the Court find that the *Grayden* opinion is not binding and that it is not persuasive authority, to the extent that it is contrary to *Villano* and *McKenzie*.

*Grayden* is distinguishable in any event. It is not an FLSA case where fees are mandatory, but rather a § 1988 case where an award of fees to the prevailing party is only discretionary. In *Grayden*, the Plaintiffs never supplemented the original motion with a specified amount of fees for

litigating the fee issue. Moreover, in *Grayden*, there was a customary practice in the Middle District of the sides estimating time for litigating the fee issue. That is not the customary practice in the Southern District, and it has not been utilized by undersigned counsel or lawyers litigating against him. Again, it would be impossible to have estimated it, as the fee litigation in *Powell* took over one hundred hours. Could you imagine if undersigned counsel sought an award of fees based on estimations that 100 hours of work would be performed in the future? Defendants would have vehemently objected. Also, the Court would up ruling that there would be no responses and replies to the objections to the Special Master's report, and undersigned counsel could not have foreseen that ruling, thus any estimate would have been inaccurate. The *Grayden* case fails to take into account that the courts in this Circuit have jurisdiction over fees and costs, as set forth in § I.

The motions here are not going to lead to a never ending succession of fee requests. They will end when the litigation ends. Defendants are paid for their time (their paralegal charges $175.00 per hour), and thus it is clear that their lawyers are paid handsomely. Certainly, then, Plaintiffs' counsel, as securing for underprivileged people their hard fought wages and retaliation damages, are entitled to their fees too, and the binding case law states that they are.

The Defendants then cite to the *Thompson* case on page 8 of their filing, and they note that it cuts against them, and it does, because in that case the Eleventh Circuit reversed a fee order which denied fees for litigating the fee issue, on the ground that plaintiffs are entitled to fees for that work.

The Defendants' final argument is that Plaintiffs "delay" was inexcusable. There was no delay and no delay that was inexcusable. The Defendants state that "Plaintiffs provide no legitimate explanation for the timing of their motion, no attempt to establish excusable neglect, and no legal argument as to why the Court should entertain their supplemental motion at this time." (*Defendants' Response* at 10). The Plaintiffs have done that above. The original fee motion took

months to resolve. It was filed in October, 2007, and ruled on in July, 2008 by the Special Master and late September, 2008 by the Court. Now the Defendants state that because the Plaintiffs filed the supplemental motion within 20 days or so of the ruling on the original fee motion there is undue delay. That argument is ridiculous. Moreover, no Court or Special Master would want to be served with additional motions and have that distraction as they are trying to get rulings out on the first motion. Moreover, *as the Defendants concede, the Plaintiffs reserved the right to file supplemental motions in their original motion. Notably, the Defendants did not object to that reservation in their response.* They therefore waived all arguments to the filing of supplemental motions, through the basic concept of waiver.

Defendants suggest that interim motions for leave to file supplemental fee motions should have been filed by the Plaintiffs. This is ridiculous. The Defendants did not object to the specific reservation that the Plaintiffs made in their original motion with respect to the filing of supplemental motions, and neither the Court nor the Special Master made any comment about that reservation in their Orders being improper.

Moreover, the Court criticized the Plaintiffs, particularly in the *Powell* fee order, for filing unnecessary motions, and thus gave the Plaintiffs strong incentive to attempt to limit filings, and thus frequent supplemental motions for fees and motions for leave to file supplemental motions would not have been appropriate. Apparently the Defendants desire a situation where the Plaintiffs (in the last ten months or so) should have filed a motion for leave to file a supplemental motion, and then the supplemental motion, wait a month or so, and then start the whole process over again. This would have been extremely inefficient, but it would have increased the amount of attorneys fees "earned" by defense counsel.

On page 12 the Defendants argue that the Plaintiffs' supplemental motion for fees "threatens to turn their fees motions into a second phase of major litigation." It is unclear how the Defendants can assert that argument with a straight face. This history of the litigation is about 500 docket entries in *Gutescu*, 2,000 in the *Rodriguez* related litigation, approximately 600 in *Powell*, and approaching 200 in *Perez*, and thus the Defendants should not be heard to complain that one supplemental fee motion in *Perez* "threatens" to create a "second" major litigation. The Defendants totally fail to state how filing the supplemental motion earlier would have eased their "burden" at all. There are appeals, Plaintiffs intend to seek fees on appeal, and have filed a Notice of Intent to Seek Attorneys Fees and Costs on Appeal. After the appeal and on remand, Plaintiffs intend (and are entitled) to seek fees. Just when should the supplemental motion have been filed to give Defendants the maximum comfort? They actually do not say. And how many? Two in between the time the original motion was filed and the Court ruled? Or three? Four?

The Defendants are complaining that they have to pay fees for their violations of the FLSA. The Defendants can settle the fee issue and stop the expenditure of them at any time. They will not. Thus, they should not be heard to complain. Their arguments that they cannot believe the fee litigation would mushroom into major litigation is belied by the history of how these Defendants litigate, and one need look no further than the *Powell* fee litigation.

Finally, the Defendants should be given no opportunity to respond to the fee motion substantively. They had their chance. Moreover, the Plaintiffs are concerned that the Defendants broke up their response into two filings, the 17-page procedural attack (the instant Response) and then a 20-something page substantive attack (which is surely to come) in order to evade the page limitations (20 pages) in the Local Rules.

         Glasser, Boreth & Kleppin
         Attorneys for Plaintiffs
         8751 W. Broward Blvd., Suite 105
         Plantation, FL 33324
         Tel.  (954) 424-1933
         Fax  (954) 474-7405
         E-mail:  Glabor@aol.com


         By  s/Chris Kleppin
           Chris Kleppin
           Fla. Bar No. 625485

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 20, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Patricia H. Thompson, Esq., Carlton, Fields, et al., 4000 International Place, 100 Southeast Second Street, Miami Florida 33131) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              By s/Chris Kleppin
                                                    Chris Kleppin
                                                      Fla. Bar No. 625485

C:/MyDocuments/Perez/Plf'sResponsetoMforReconside-AttyFeesArb02/15/08